# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

VICTOR BARRY,                    :

              Plaintiff,          :

                                               Case No. 3:09CV0241

  vs.                          :

                                               District Judge Thomas M. Rose

MICHAEL J. ASTRUE,               :          Magistrate Judge Sharon L. Ovington
     Commissioner of the Social
     Security Administration,        :

              Defendant.          :

_____

# REPORT AND RECOMMENDATIONS[1]

_____

## I.      INTRODUCTION

Plaintiff Victor Barry sought financial assistance from the Social Security
Administration by applying for Disability Insurance Benefits ["DIB"] in January
2006, alleging disability since September 1, 2003.  (Tr. 67-71).  He claims disability
from diabetes, surgical removal of left kneecap, joint pain and right lower back
pain.  (Tr. 81).  Plaintiff also claims to be disabled by heart problems.  (Tr. 120).

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and
Recommendations.

1

After various administrative proceedings, Administrative Law Judge

["ALJ"] Thomas R. McNichols, II, denied Plaintiff's DIB application based on his

conclusion that Plaintiff's impairments did not constitute a "disability" within

the meaning of the Social Security Act. (Tr. 23). The ALJ's nondisability

determination and the resulting denial of benefits later became the final decision

of the Social Security Administration. Such final decisions are subject to judicial

review, *see* 42 U.S.C. § 405(g), which Plaintiff now is due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #8),

the Commissioner's Memorandum in Opposition (Doc. #11), the administrative

record, and the record as a whole.

Plaintiff seeks a reversal of the ALJ's decision and remand for payment of

benefits. At minimum, Plaintiff seeks a remand of this case to the Social Security

Administration to correct certain claimed errors. The Commissioner seeks an

Order affirming the ALJ's decision.

## II.    BACKGROUND

Plaintiff was 52 years old at the time of the administrative decision, and

thus was considered to be "closely approaching advanced age" for purposes of

resolving his DIB claim. *See* 20 C.F.R. § 404.1563(e); (*see also* Tr. 126). He has a

high school equivalent education. *See* 20 C.F.R. § 404.1564(b)(4); (*see also* Tr. 85).

Plaintiff has worked in the past as a machine operator, on an assembly line in a truck factory, a foil press operator and in lawn maintenance. (Tr. 82, 90-94).

Plaintiff testified at the administrative hearing that he becomes short of breath if he tries to do to much. (Tr. 457). If he moves around the house for 15 minutes, he then has to rest for 15 minutes. (Tr. 458). He experiences essentially constant chest pain, which is annoying but not "super bad." (*Id.*). He sees a cardiologist every six months and his family physician every couple months. (Tr. 459-60). He has diabetes which is under control, but his feet sometimes swell. (*Id.*). He also complained of low back pain. (Tr. 461). He has not had any injections or physical therapy for his back. (Tr. 462). He stated that he had three surgeries on his left knee, including removal of his patella. (*Id.*). He can walk, but his knee is "wearing out." (*Id.*). He has not been seeing a knee specialist. (Tr. 463). His cholesterol also is high. (*Id.*). He is depressed and hard to get along with and is on Prozac. (*Id.*). He feels he cannot work due to his age and general condition. (Tr. 464). He said that he needs to prop up his feet. (*Id.*).

Plaintiff further testified that he has had chest pain since his aortic valve replacement surgery in 2003. (Tr. 465). He testified that the chest pain comes and goes on a daily basis and typically is at a two to three on pain scale to 10. (*Id.*). He can lift his left arm to shoulder level. (Tr. 466). He took nitroglycerin a few

times, but it caused headaches. (*Id*.). His knee pain can be as high as five to six in severity on a 10 scale, but averages four. (*Id*.). He has taken Percocet for back and knee pain, which allows him to sleep at night. (Tr. 467). He is most comfortable when he is lying on his back on the couch. (*Id*.).

Plaintiff estimated that he could walk maybe one-quarter mile, but would have to stop due to his feet swelling and shortness of breath. (Tr. 467). He can stand or sit for 15 to 20 minutes each at a time. (Tr. 467-68). He can lift 10 pounds repeatedly and 30 pounds maximum. (Tr. 468). He can climb stairs. (*Id*.). He felt that he could work if he were sitting and could elevate his feet. (Tr. 469).

As to his daily activities, Plaintiff testified that at home, he cooks a little and helps with the dishes, but does no sweeping, mopping or laundry. (Tr. 469). He might pick up one item at the store. (Tr. 470). He tries to play pool once a week. (*Id*.). He might use the riding mower, but his son uses the push mower. (Tr. 471). He took a trip to Florida in February 2009. (*Id*.). He said that he stopped smoking after he had surgery in 2003. (Tr. 472). He can feed, dress and groom himself. (*Id*.). In a typical day, he may putter around the house, pick up branches, eat meals, and watch a lot of television. (Tr. 472-73).

The parties' briefs fairly set out the relevant medical evidence of record. This Report and Recommendation will summarize the medical opinions only briefly.

Alper Sarihan, D.O.  Family practice physician Dr. Sarihan treated Plaintiff from February 3, 2004, through at least October 14, 2008.  (Tr. 270-78, 398-420, 442-48).  On June 7, 2006, Dr. Sarihan reported that Plaintiff's lifting was limited to 10 pounds occasionally and frequently due to mechanical aortic valve placement, diabetes, and coronary artery disease.  Dr. Sarihan felt that Plaintiff could stand/walk for two hours in a day but only 15 minutes uninterrupted due to low back pain, right hip pain, and left calf pain.  Sitting was limited to four hours in an eight hour day and 10 minutes at a time due to low back pain and right hip pain.  Climbing, stooping, crouching and kneeling were limited to a rare/no basis, and balancing, crawling, reaching, handling, feeling, pushing or pulling and fine/gross manipulation were limited to an occasional basis due to low back pain, right hip pain, left calf pain, and chest pain.  Dr. Sarihan believed that Plaintiff was limited from working around heights, moving machinery, temperature extremes, chemicals, dust, noise and fumes.  (Tr. 412-13).

On January 19, 2007, Dr. Sarihan opined that Plaintiff was limited to lifting 10 pounds occasionally and five to 10 pounds frequently.  He could stand/walk

for two hours each day, but only 15-20 minutes without interruption due to exertional dyspnea with chest pain. Sitting was limited to three to four hours out of an eight hour day and only one hour at a time due to right hip pain. Plaintiff was limited to rare/none in his ability to climb, balance, stoop, crouch, kneel and crawl due to bilateral knee pain. Pushing or pulling, feeling, and fine manipulation were limited to an occasional basis. Dr. Sarihan opined that Plaintiff needed additional breaks each day and a sit/stand option. Dr. Sarihan reported Plaintiff's pain as moderate. (Tr. 337-38).

Faiz Akhter, M.D. On May 21, 2004, Dr. Akhter, a cardiologist, completed a questionnaire at the request of the Ohio Bureau of Disability Determinations ["BDD"]. Plaintiff complained of anterior chest pain but noted that it was more muscular in nature. Dr. Akhter noted that Plaintiff's most recent ejection fraction, in February 2004, was 60 percent. Dr. Akhter diagnosed Plaintiff as New York Heart Association (NYHA) Class I, reflecting no limitation in physical activity. Dr. Akhter felt that Plaintiff was experiencing optimal benefit from the prescribed therapy. (Tr. 245-47).

Dr. Akhter completed another Ohio BDD questionnaire on February 1, 2006, again  noting that Plaintiff's latest ejection fraction was 60 percent and classifying Plaintiff as NYHA Class I. (Tr. 357-58).

Lynne Torello, M.D.  Dr. Torello, a state agency reviewing physician, reported on July 23, 2004, that Plaintiff still was complaining of shortness of breath, fatigue, weakness and pain in June 2004, but had no documented problems besides polyarthralgias (joint pain).  Dr. Torello further reported that Plaintiff was NYHA Class I.  He noted that x-rays of Plaintiff's left knee showed minor degenerative changes.  Dr. Torello found that Plaintiff's current symptoms were not in proportion to his current condition and were only partially credible. Dr. Torello opined that Plaintiff was capable of lifting 10 pounds frequently and 20 pounds occasionally.  He felt that Plaintiff could sit, stand and walk for six hours each in an eight hour workday.  Dr. Torello limited Plaintiff to occasional climbing of ramps/stairs, kneeling, crouching and crawling, and he was to avoid all exposure to hazards.  (Tr. 248-53).

Gary Hinzman, M.D.  On February 18, 2005, Dr. Hinzman, a state agency reviewing physician, reported that Plaintiff alleged worsening of his condition, was still feeling bad, alleged swelling of the lower extremity when sitting or walking, and could not walk for long periods or sit too long.  Dr. Hinzman's review of the record revealed that Plaintiff had normal LVEF (left ventricle ejection fraction) at 60 percent, was NYHA Class I, and was able to go to 7 METS (Metabolic Syndrome) on the GXT (Graded Exercise Stress Testing).  He had no

edema and no evidence of CHF (congestive heart failure). Review of an interim office visit confirmed stability of the process. Cardiac cath (catheterization) showed no significant CAD (coronary artery disease), and AVR (aortic valve replacement) was functioning well. No new cardiac diagnosis was identified. Plaintiff had minor DJD (degenerative joint disease) of the left knee with no impact on his functional status. Dr. Hinzman concluded that Plaintiff's allegations were not consistent with the objective findings. (Tr. 279).

William Padamadan, M.D. Dr. Padamadan examined Plaintiff on behalf of the Ohio BDD on April 18, 2006. Plaintiff's complaints included a left patella removal 20 years prior, congestive heart failure, low back pain, and right hip pain. He reported that the knee still caused him pain and discomfort, with pain radiating into the left calf and causing strain on his back and right hip. Examination revealed a prosthetic valve click which was audible with a systolic murmur at the apex and the left sternal border. Dr. Padamadan found that Plaintiff's chest "moved well with respirations." Left hip and knee flexors and extensors were at four out of five. Lumbar spine range of motion was slightly decreased, but range of motion in Plaintiff's hips, knees and ankles was normal "in spite of [the] left patella being removed." Plaintiff could walk on both his heels and toes. An x-ray of the left knee revealed absent patella and some

degenerative arthrosis of the lateral compartment of the knee.  Dr. Padamadan diagnosed remote left patellar surgery 20 years prior, aortic valve replacement with NYHA class I, and low back pain.  Dr. Padamadan limited Plaintiff to no work around dangerous machinery with the potential for cuts and bruises because he was taking Coumadin, a blood thinner. (Tr. 292-300).

Esberdado S. Villanueva, M.D.  On June 4, 2006, Dr. Villaneuva, a state agency reviewing physician, reported that Plaintiff had normal range of motion in his lower extremities.  Plaintiff's left knee was normal on extension and was considered stable.  Dr. Villanueva further noted that Plaintiff could walk on his toes and heels.  Dr. Villanueva opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, and sit and stand/walk for six hours a day.  Dr. Villanueva further opined that Plaintiff should never climb ladders, ropes or scaffolds. (Tr. 319-26).

Elizabeth Das, M.D.  Based on new cardiac information, Plaintiff's medical evidence of record again was reviewed by a state agency physician.  On November 14, 2006, Dr. Das reported that Plaintiff's EKG had shown the replacement valve was in good position, and Plaintiff had performed normally on an exercise test.  Plaintiff's ejection fraction was 55 percent.  Dr. Das opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, and sit

and stand/walk for six hours a day.  Plaintiff only occasionally should climb ramps or stairs, kneel and crawl.  Plaintiff should never climb ladders, ropes or scaffolds, and should avoid all exposure to hazards.  According to Dr. Das, Plaintiff was partially credible.  (Tr. 327-35).

## III.    THE "DISABILITY" REQUIREMENT AND ADMINISTRATIVE REVIEW

### A.    <u>Applicable Standards</u>

The Social Security Administration provides DIB to individuals who are under a "disability," among other eligibility requirements.  *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1)(D).  The term "disability" – as defined by the Social Security Act – has specialized meaning of limited scope.  It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity.  *See* 42 U.S.C. § 423(d)(1)(A); *see also Bowen*, 476 U.S. at 469-70.  A DIB  applicant bears the ultimate burden of establishing that he or she is under a "disability."  *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence.  (*See* Tr. 13-15); *see also*

20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any Step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

**B. The ALJ's Decision**

At Step 1 of the sequential evaluation, the ALJ found that Plaintiff met the insured status requirements of the Act through June 30, 2008. (Tr. 16). The ALJ also found that Plaintiff had not engaged in substantial gainful activity from September 1, 2003, through his date last insured. (*Id.*).

11

The ALJ found at Step 2 that Plaintiff has the severe impairments of congestive heart failure with remote aortic valve replacement; chronic left knee pain; and a history of depression. (*Id*.). The ALJ determined at Step 3 that Plaintiff does not have an impairment or combination of impairments that meet or equal the level of severity described in Appendix 1, Subpart P, Regulations No. 4. (Tr. 18).

At Step 4, the ALJ found that Plaintiff retained the residual functional capacity ["RFC"] to perform a limited range of light, work subject to 1) alternate sitting and standing at 30 minute intervals; 2) no lifting more than 10 pounds; 3) no repetitive use of foot controls on the left; 4) no stooping, kneeling, crouching or crawling; 5) no pushing or pulling; 6) occasional balancing and no climbing ropes, ladders or scaffolds; 7) no exposure to hazards or temperature extremes or humidity; and 8) low stress jobs with no production quotas. He noted that light work by definition ordinarily requires the capacity to left 10 pounds frequently and 20 pounds occasionally, and to engage in a good deal of sitting, standing or walking. (Tr. 19). The ALJ further found that through the date last insured, Plaintiff was capable of performing jobs that existed in significant numbers in the national economy. (Tr. 22). This assessment, along with the ALJ's findings

throughout his sequential evaluation, ultimately led him to conclude that Plaintiff was not under a disability and hence not eligible for DIB. (Tr. 23).

## IV.    JUDICIAL REVIEW

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r. of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r. of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . ." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry, reviewing for correctness the ALJ's legal criteria, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r. of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r. of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

V.    **DISCUSSION**

      A.    **The Parties' Contentions**

      Plaintiff maintains that the ALJ erred by crediting the opinions of the state agency physicians, Drs. Torello, Hinzman, Villanueva and Das, over the opinions of his treating physician, Dr. Sarihan. Plaintiff contends that the ALJ failed to grant controlling weight to Dr. Sarihan's opinions. (Doc. 8 at 11). Plaintiff reasons that certain objective evidence of record supports Dr. Sarihan's opinion rather than the state agency opinions. (*Id.* at 13). Plaintiff next argues that the medical evidence does not support the ALJ's RFC assessment. (*Id.* at 15). Specifically, Plaintiff argues that he could not perform the standing and walking

requirements of light duty work.  (*Id.* at 15-16).  Finally, Plaintiff contends that

the ALJ erred by not finding Plaintiff disabled under Grid Rule 201.14, Appendix

2 to Subpart P, Part 404.  (*Id.* at 17).

The Commissioner argues that Dr. Sarihan's opinions were not entitled to

controlling or deferential weight, and that the ALJ properly weighed those

opinions as required by the Regulations and Rules.  According to the

Commissioner, substantial evidence supports the ALJ's decision, particularly his

reliance on the opinions of Drs. Torello, Hinzman, Villanueva and Das, who

examined the record at the request of the Ohio BDD.  The Commissioner further

argues that after considering all of Plaintiff's limitations, the ALJ correctly

determined that the majority of objective findings and opinions supported a

finding that Plaintiff could perform a reduced range of light work.

**B.**    **Medical Source Opinions**

1.    *Treating Medical Sources*

Key among the standards to which an ALJ must adhere is the principle

that greater deference generally is given to the opinions of treating medical

sources than to the opinions of non-treating medical sources.  *Rogers v. Comm'r of

Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see* 20 C.F.R. § 404.1527(d)(2).  This is so,

the Regulations explain, "since these sources are likely to be the medical

professionals most able to provide a detailed, longitudinal picture of [a DIB claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examiners, such as consultative examinations or brief hospitalizations . . ." 20 C.F.R. § 404.1527(d)(2); *see also Rogers*, 486 F.3d at 242. In light of this, an ALJ must grant controlling weight to a treating source's opinion when it is both well supported by medically acceptable data and not inconsistent with other substantial evidence of record. *Rogers*, 486 F.3d at 242; see *Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2).

If either of these attributes is missing, the treating source's opinion is not deferentially due controlling weight, *Rogers*, 486 F.3d at 242; *see Wilson*, 378 F.3d at 544, but the ALJ's analysis does not end there. Instead, the Regulations create a further mandatory task for the ALJ:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable [data] . . . or is inconsistent with other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected . . .

Social Security Ruling 96-2p, 1996 WL 374188, at *4. The Regulations require the ALJ to continuing the evaluation of the treating source's opinions by considering "a host of other factors, including the length, frequency, nature, and extent of the

treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242; *see Wilson*, 378 F.2d at 544.

"[I]n all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician [or psychologist] is entitled to great deference, its non-controlling status notwithstanding." *Rogers*, 486 F.3d at 242.

### 2.    *Non-Treating Medical Sources*

The Commissioner views non-treating medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p, 1996 WL 374180, at *2. Yet the Regulations do not permit an ALJ to automatically accept (or reject) the opinions of a non-treating medical source. *See id.*, at *2-*3. The Regulations explain, "In deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive." 20 C.F.R. § 404.1527(b). To fulfill this promise, the Regulations require ALJs to evaluate non-treating medical source opinions under the factors set forth in § 404.1527(d) including, at a minium, the factors of supportability, consistency and specialization. *See* 20 C.F.R. § 404.1527(f); *see also* Ruling 96-6p, at *2-*3.

C.    <u>Analysis</u>

In June 2006 and January 2007, Dr. Sarihan opined that Plaintiff would be able to perform less than full-time sedentary work.  (Tr. 412-13, 337-38).  The ALJ rejected these opinions, stating that Dr. Sarihan's assessments "are not supported by detailed medical findings and also would seem incompatible with the moderate degree of pain acknowledged by Dr. Sarihan."  (Tr. 21).  The ALJ further explained that he considered Dr. Sarihan's opinions to "receive poor marks" in terms of "supportability and consistency with the record," and thus gave them "no controlling or deferential weight (that is, Dr. Sarihan's opinions are given little weight)."  (*Id.*)

A review of the record confirms that Dr. Sarihan did not support his opinion with diagnostic findings or objective evidence.  Beyond a general finding that Plaintiff was in pain, Dr. Sarihan failed to provide any indication of why he believed that Plaintiff was impaired.  In determining Plaintiff's functional limitations, Dr. Sarihan referred to back and hip pain, but neither opinion contains any rationale for the conclusions reached.  (*See* Tr. 337-38, 412-13).  It is well established that an ALJ is not bound to accept a treating physician's opinion if that opinion lacks sufficient support in terms of medical signs and laboratory findings, or is internally inconsistent or inconsistent with other credible evidence

of record.  20 C.F.R. § 404.1527(c)(2); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387,

389 (6th Cir. 2004); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535-36 (6th Cir. 2001).

As the Commissioner notes, Plaintiff saw several physicians concerning his

alleged heart and knee impairments, yet the only physician who stated that

Plaintiff had serious difficulty standing and walking was Dr. Sarihan.  By

declining to give controlling weight to Dr. Sarihan's opinion based on that

doctor's omission of supporting objective medical evidence and the inconsistency

of that opinion with other record evidence, the ALJ did not err as a matter of law.

*See* 29 C.F.R. § 404.1527(d)(2).

    In determining whether a claimant is disabled, an administrative law judge

makes a residual functional capacity determination.  That finding is an

"assessment of the claimant's remaining capacity for work" once his or her

limitations have been taken into account.  20 C.F.R. § 416.945.  It is "a more

complete assessment of [his] physical and mental state and should include an

'accurate portray[al] [of his] individual physical and mental impairment[s].'"

*Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 239 (6th Cir. 2002) (citing *Varley v. Sec'y*

*of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987); *Myers v. Weinberger,* 514

F.2d 293, 294 (6th Cir. 1975) (*per curiam*)).

In determining Plaintiff's RFC for a reduced range of light work, the ALJ essentially followed the recommendations of the Ohio BDD reviewing physicians, Drs. Torello, Hinzman, Villanueva and Das. (Tr. 20). According to the ALJ, "Those assessments, based on reviews of medical evidence over a greater than two year period, are entitled to considerable weight as they were accompanied by detailed summaries of medical findings showing that the claimant had stable heart and left knee conditions following surgical procedures." (*Id*.). The ALJ further noted that multiple cardiac tests conducted since the aortic valve replacement have demonstrated no recurrent heart failure. He cited to tests showing a functioning aortic valve prosthesis, patent coronary arteries, and generally good cardiac output. (*See* Tr, 236-40, 339, 370-74). Additionally, the opinions of the state agency physicians were based on other objective medical findings, including exercise performance tests, x-rays, MRIs and EKGs. (Tr. 248-53, 279, 292-300, 319-26, 327-35).

Two other physicians further support the ALJ's RFC findings. For example, an examining physician, Dr. Padamadan, found that Plaintiff's only significant limitation was to avoid risk of cuts and bruises due to his prescribed blood thinner, Coumadin. (Tr. 295). Further, Dr. Padamadan's physical examination showed that Plaintiff's knee joint was stable and that he was capable

20

of sitting, standing and walking.  (Tr. 294).  Dr. Akhter, a treating cardiologist, also estimated that the Plaintiff had a Class I heart condition, which would not denote significant functional limitations.  (Tr. 245-47, 357-58).

Because the ALJ applied the correct legal criteria to his evaluation of the medical source opinions of record, and because substantial evidence supported his evaluation of those opinions, the ALJ reasonably concluded that Plaintiff could perform a reduced range of light work.  Although Plaintiff disagrees with the ALJ's weighing of the evidence, the ALJ's decision was within the zone of reasonable choices.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("The substantial evidence [standard] . . . presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts.").

Finally, Plaintiff argues that the ALJ erred by not finding him limited to sedentary work at age 50, and in turn, by not finding him to be disabled pursuant to Grid Rule 201.14, Medical-Vocational Guidelines, 20 C.F.R. Subpart P, Appendix 2.  This argument lacks merit because the ALJ's assessment of Plaintiff's RFC – at the limited range of light work – was supported by substantial evidence, particularly the opinions of Dr. Torello, Dr. Hinzman, Dr. Villanueva and Dr. Das.  As a result, the ALJ was not required to apply Grid Rule 201.14,

which applies only to those aged 50 who can perform only sedentary work. *See Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003) (claimant's characteristics must match exactly the criteria in Grid Rules to trigger disability finding).

Accordingly, for all the above reasons, the ALJ's decision – which constituted the Commissioner's final non-disability determination – should be affirmed.

**IT THEREFORE IS RECOMMENDED THAT:**

1.  The Commissioner's final non-disability decision be AFFIRMED;

2.  The case be TERMINATED on the docket of this Court.

May 6, 2010                                         s/Sharon L. Ovington
                                                    Sharon L. Ovington
                                                    United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen (17) days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Am*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).